**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **PHYLLIS HUNTER WEST,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:20-cv-00002** |
| ) | **Judge Aleta A. Trauger** |
| **NORTHCREST MEDICAL CENTER** ) | |
| **AND UNUM INSURANCE COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Before the court is defendant NorthCrest Medical Center's Amended Motion to Dismiss. (Doc. No. 9.) For the reasons set forth herein, the motion will be granted in part and denied in part.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Phyllis West filed suit in this court on January 2, 2020. Her Complaint (Doc. No. 1) names NorthCrest Medical Center ("NCMC") and UNUM Insurance Company ("UNUM") as defendants and asserts claims based on the Family and Medical Leave Act ("FMLA"), specifically 29 U.S.C. § 2615(a)(2), as well as state law claims for contract reformation, breach of contract, and, alternatively, promissory estoppel. The plaintiff invokes the court's federal-question and diversity jurisdiction. (Doc. No. 1 ¶ I.)

West alleges that she was employed by NCMC for over twenty-two years. During the last twelve years of her employment, she maintained policies of life insurance, through her employer but provided by UNUM, on both her life and the life of her spouse. Relevant here is the $70,000 policy on her husband's life ("Policy"). Payment to maintain that Policy was drafted from each of West's paychecks in the amount of $40 every two weeks during her employment. (Doc. No. 1 ¶

II.A.)

West's husband was diagnosed with terminal cancer in 2017, and his condition began to seriously deteriorate during the first half of 2018. West had taken intermittent leave to care for him up until that time, but, by the spring of 2018, she believed that, because of her need to provide appropriate care for him, she needed either to seek "the maximum FMLA family leave time (in view of the anticipated long-term requirements), or an early retirement." (*Id.* ¶¶ II.C.)

The plaintiff discussed her dilemma with her supervisors and the Human Resources Department at NCMC. One of the primary points of her discussions was her need, no matter what, to maintain and preserve the Policy and to continue to pay the monthly fee on the Policy. (*Id.* ¶ II.D.) NCMC's agents represented that they fully understood her concerns. She was nonetheless encouraged to take early retirement and given repeated assurances that the Policy "with UNUM would be preserved by the Employer, and available for her benefit upon the impending death of her spouse." (*Id.* ¶ II.E.) Acting upon that encouragement and the affirmative assurances that the Policy would be maintained and that she did not need to request FMLA leave from NCMC to preserve the policy, West opted to take early retirement, effective May 4, 2018. (*Id.*) NCMC assured her that it would assume responsibility for preparing the appropriate paperwork and preserving the existing Policy. "If Plaintiff had understood that there would be any question whatsoever about the preservation of that needed life insurance benefit, she would have simply opted for the FMLA option for the purpose of getting at least twelve (12) additional full weeks of guaranteed benefit, as she cared daily for her deteriorating husband." (*Id.* ¶ II.G.)

West's husband died on September 16, 2018. (*Id.* ¶ II.G.) Her claim for benefits under the Policy was denied by UNUM on the basis that, when she took retirement, it had issued a new life insurance policy that had an exclusion for pre-existing conditions as of the time the policy was

reissued. (*Id.* ¶ II.H.)[1]

Based on the denial of her claim for benefits, West filed this lawsuit asserting: (1) a claim for "equitable contract reformation" against both NCMC and UNUM; (2) a claim for breach of contract against NCMC only and, in the alternative, a claim for breach of an oral contract or promissory estoppel (to which the plaintiff refers as "detrimental reliance"), all based on NCMC's promises that it would insure a proper transfer of the existing Policy and that the Policy would remain in full force and effect, in exchange for the plaintiff's electing to take early retirement instead of FMLA benefits; and (3) a claim against NCMC only for interference with FMLA benefits.

NCMC's Amended Motion to Dismiss[2] (Doc. No. 9) argues that (1) the plaintiff's state law contract-based claims are preempted in their entirety by the Employee Retirement Income Security Act ("ERISA"), and (2) the FMLA claim is subject to dismissal because West does not allege any facts showing prejudice resulting from the alleged interference with FMLA benefits. The plaintiff has filed a Response to the Amended Motion to Dismiss, along with an Affidavit and other documents, arguing that her claims are not entirely preempted and that she has adequately pleaded a *prima facie* case of FMLA interference. NCMC filed a Reply, arguing that the allegations in West's "self-serving Affidavit" conflict with those in the Complaint and fail to save her FMLA claim from dismissal.

---

[1] West is pursuing a parallel administrative proceeding against UNUM under ERISA, 29 U.S.C. §§ 1132(a) and 502(a). (Doc. No. 1 ¶ II.H.)

[2] The defendant's original Motion to Dismiss (Doc. No. 7), filed on February 19, 2020, was denied as moot (Doc. No. 12) in light of the filing of the Amended Motion on February 20, 2020.

## II. SUBMISSION OF DOCUMENTS OUTSIDE THE PLEADINGS

Under Rule 12, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court," a Rule 12(b)(6) motion to dismiss "*must* be treated as one for summary judgment under Rule 56," and the court must give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) (emphasis added); *see Luis v. Zang*, 833 F.3d 619, 632 (6th Cir. 2016) ("[I]f affidavits are filed with the district court, the court must proceed under Rule 56 unless the court decides to exclude the affidavits." (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 392 (6th Cir. 1975)).

The defendant does not object to the plaintiff's submission of her Affidavit and other documents in conjunction with her Response to the Motion to Dismiss, but the court expressly excludes them from consideration in ruling on the present motion. Having excluded the documents submitted by the plaintiff, the court will not convert the defendant's motion into one for summary judgment.

## III. RULE 12(B)(6) STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## IV.     DISCUSSION

### A.     ERISA Preemption

ERISA sets up a regulatory regime to protect people participating in employee benefit plans. 29 U.S.C. § 1001(b). The enforcement arm of ERISA, 29 U.S.C. § 1132, "sets forth who can sue, when they can sue, and what remedies they can get." *K.B. by and through Qassis v. Methodist Healthcare*. 929 F.3d 795, 799 (6th Cir. 2019) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53–54 (1987)). Plan participants and beneficiaries are able "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has recognized that this scheme "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life*, 481 U.S. at 54. "Thus, the purpose of ERISA preemption is to guarantee that all claims based on ERISA are brought where and how Congress specified in the ERISA

statute. Otherwise, plaintiffs could seek different remedies than those Congress specified." *K.B.*, 929 F.3d at 799–800 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4 (2004)). "In effect, because 'Congress has blotted out (almost) all state law on the subject of' ERISA plans, 'a complaint about [such a plan] rests on federal law no matter what label its author attaches.'" *Id.* at 800 (quoting *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir. 1992)).

A two-step test applies to assist the court in determining whether ERISA completely preempts a state claim:

> First, the plaintiff must be complaining about a denial of benefits under the terms of her ERISA plan. Second, the plaintiff must only allege the violation of a legal duty (federal or state) that is dependent on ERISA or on the ERISA plan's terms. [N]o other independent legal duty [may be] implicated by a defendant's actions.

*Id.* at 800–01 (internal citations and quotation marks omitted).

The Sixth Circuit has recognized that "ERISA preemption . . . turn[s] on . . . the true nature of the issues underlying the claim." *Thurman v. Pfizer,* Inc., 484 F.3d 855, 862 (6th Cir. 2007) (citation omitted). Thus, for instance,

> [w]here resolution of [a] misrepresentation claim necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted. In the alternative, where the resolution of a misrepresentation claim does not require interpreting the parties' responsibilities under the plan, or where the requested remedy refers to the plan only for the purpose of defining specific, ascertainable damages, . . . such claims are not preempted.

*Id.* (internal quotation marks, citations, and footnotes omitted).

NCMC argues that all of West's state law claims "arise from and directly relate to" her claim for benefits under the Policy and are "based on the alleged wrongful denial of her request for benefits" under the Policy, as the plaintiff effectively admits when she references the fact that there is a "pending administrative proceeding . . . under ERISA." (Doc. No. 10, at 4.) In response, the plaintiff concedes that "at least a portion of her claims . . . may be preempted," but she does

not make it entirely clear what portion she is referring to. She appears to be arguing that, in addition to her FMLA claim, her claim based on NCMC's promises to maintain the Policy on West's husband's life is not preempted.

As an initial matter, it is clear—and the plaintiff apparently concedes—that the claim for "equitable contract reformation" asserted against both NCMC and UNUM (the only claim asserted in the Complaint against UNUM) is preempted, as it seeks to reinstate the actual Policy that was in effect at the time the plaintiff took early retirement. That Policy is indisputably an employee benefit governed by ERISA, and the claim to recover benefits under that Policy is preempted. The Motion to Dismiss will be granted insofar as it is directed to that claim.

The plaintiff's other state law claim, whether characterized as a claim for breach of contract, breach of oral contract, or promissory estoppel (*see* Doc. No. 1 ¶ III.B.), is based on West's allegations that NCMC promised, and reneged on its promise, to take steps to ensure that the Policy would remain in effect if the plaintiff forewent her right to take FMLA leave and retired instead. Any liability under this claim would not "derive[]" from "the particular rights and obligations established by [any] benefit plan[]." *Davila*, 542 U.S. at 213. Instead, this claim presumes, in the alternative to the ERISA-based claim, that the original Policy was terminated and that the plaintiff is not entitled to benefits thereunder, and it derives from a separate promise that references a benefit plan as a means of establishing the value of that promise. "Because [West's] state law claim[] derive[s] from this promise rather than from an ERISA benefits plan, [its] resolution does not require a court to review the propriety of an administrator's or employer's determination of benefits under such a plan." *Stevenson v. Bank of New York Co.*, 609 F.3d 56, 60–61 (2d Cir. 2010). This conclusion is further confirmed by the fact that any damages arising from this claim "would be payable from [NCMC's] assets, not from the" plan itself. *Gardner v.*

*Heartland Indus. Partners, LP*, 715 F.3d 609, 611, 615 (6th Cir. 2013) (quoting *Stevenson*, 609 F.3d at 61).

In other words, the claim against NCMC premised upon its breach of a promise to ensure that the original Policy remained in effect is not preempted by ERISA. The motion to dismiss this claim, therefore, will be denied.

### B.    FMLA Claim

The defendant next argues that the plaintiff's claim for FMLA interference must be dismissed solely on the basis that the plaintiff has failed to allege facts showing that she was prejudiced by the alleged interference with FMLA leave.

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" leave rights accorded by the statute, 29 U.S.C. § 2615(a)(1), and violators are subject to consequential damages and appropriate equitable relief. *Id.* § 2617(a)(1). The FMLA, however, does not provide relief on an interference claim unless the plaintiff "has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (citing 29 U.S.C. § 2617(a)(1). Thus, because reinstatement following a leave period is "the linchpin" of an interference claim, *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006), a plaintiff who would not have been able to return to work at the end of her leave cannot bring a claim under the FMLA. *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784–85 (6th Cir. 1998).

The defendant's argument for dismissal here is premised upon the assumption that West could not, or would not, have returned to work after expiration of the statutory twelve weeks of leave, even if she had taken it. NCMC reasons that, if West had taken FMLA leave beginning May 4, 2018, instead of retiring on that date, her twelve weeks of leave would have been exhausted no later than July 27, 2018. Her husband's health, however, apparently did not improve in the interim, and he did not die until September 16, 2018, an additional 51 days later. The defendant asserts that

the plaintiff "pleads no facts to indicate that she could have returned to work at the end of this hypothetical FMLA leave. Instead, the facts as pled demonstrate that Mr. West passed away after Ms. West's FMLA leave would have expired and she would have been required to make another decision about her employment." (Doc. No. 10, at 6.) She was not eligible for leave extending into September and, the defendant claims, "would not have been able to return to work after her proposed FMLA leave ended on July 27, 2018 because the alleged facts establish that Mr. West had not improved by that time." (*Id.*) The defendant argues that the plaintiff cannot show that she was prejudiced by any purported FMLA interference and that the claim must be dismissed on this basis.

The court is not persuaded. To be clear, prejudice is the only element of the plaintiff's FMLA claim that the defendant attacks at this time. The Complaint, however, alleges that the plaintiff was determined not to lose her entitlement to recover under the Policy upon her husband's inevitable death. While the plaintiff alleges that she faced a decision whether to retire or take FMLA leave in May 2018, the Complaint does not establish that she would *not* have returned to work when that FMLA leave benefit was exhausted. As the defendant itself states, the facts as pleaded show only that West "would have been required to make another decision about her employment" at that time. (Doc. No. 10, at 6.)

As regards that choice, the plaintiff affirmatively states: "If Plaintiff had understood that there would be any question whatsoever about the preservation of that needed life insurance benefit, she would have simply opted for the FMLA option for the purpose of getting at least twelve (12) additional full weeks of guaranteed benefit." (Doc. No. 1 ¶ II.H.) That statement could, potentially, be construed to mean that the plaintiff would have retired at the end of the twelve weeks, but it could also be construed to mean that she would have found a way to return to work

in order to preserve the benefit. Construing the allegations in the Complaint in the light most favorable to the plaintiff, and particularly in light of her determination not to lose benefits under the Policy that she had continuously maintained for more than twelve years, the court finds that the Complaint gives rise to a reasonable inference that the plaintiff would have returned to work when her FMLA leave expired, if that was what was required in order to preserve the benefit, and, therefore, that she was prejudiced by the denial of FMLA leave.

The facts may ultimately prove to be otherwise, but, at this juncture, the court finds that the plaintiff adequately pleads an injury arising from interference with her FMLA rights. The motion to dismiss this claim will be denied.

## V.     CONCLUSION

For the reasons forth herein, the Motion to Dismiss will be granted in part and denied in part. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge